IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ICE GLASS PRINTS FLORIDA, LLC, and FOX FAMILY, LLC., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 08 CV 5284 ) ) Wayne R. Andersen |
| SURPRIZE LLC., SURDEC LLC., ART CRYSTAL LTD., ART CRYSTAL II ENTERPRISES, INC., PAUL RAMSDEN and ARTHUR MOSTOW. | ) District Judge ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

On November 24, 2009, Magistrate Judge Schenkier issued his report and recommendation concerning plaintiffs' motion to enforce the settlement agreement in this case [144]. Plaintiffs/counter-defendants Ice Glass Prints Florida, LLC, Robert Fox and Fox Family LLC (collectively the "Fox Parties") and defendants Surdec LLC and Paul Ramsden (the "Ramsden Parties") filed a joint motion to enforce an oral settlement agreement, and defendants/counter-plaintiffs Arthur Mostow, Art Crystal Ltd. and Art Crystal II Enterprises, Inc. (collectively the "Mostow Parties") opposed that motion. We referred this motion to Judge Schenkier since he conducted the settlement mediation with the parties on May 22, 2009. Judge Schenkier recommends that plaintiffs' motion to enforce the settlement agreement be granted. After careful consideration of the motion to enforce the settlement agreement, Judge Schenkier's findings of fact and conclusions of law, and defendants' objections thereto, this court hereby adopts in full Judge Schenkier's report and recommendation.

**BACKGROUND**

Judge Schenkier's report and recommendation includes an extensive factual background regarding the events at issue in the instant motion to enforce the settlement agreement. Judge Schenkier supervised the settlement proceedings in this case, and he provided a detailed outline of the events that transpired from the date of the mediation through ruling on the motion to enforce the settlement agreement. Judge Schenkier's ruling was based on his own notes from the mediation, statements made in open court by the lawyers and emails exchanged by the lawyers, term sheets exchanged by the parties, affidavits and other evidentiary material submitted to the court. We have reviewed the record in its entirety, and we are satisfied with, and agree with, Judge Schenkier's findings of facts. Therefore, we adopt Judge Schenkier's recitation of the factual events as our own.

On May 22, 2009, Judge Schenkier conducted a mediation in this case. The principals of all the parties with settlement authority and their attorneys attended the mediation. At the end of the mediation, Judge Schenkier found that the parties had reached a settlement on all issues with one term remaining open as to whether the Art Crystal would be able to continue to use certain trade names, marks and logos that Mr. Mostow claimed infringed his alleged trademarks. 11/24/09 Transcript ("Tr.") at 5-6. The parties left the mediation with instructions from Judge Schenkier to resolve the final issue and report back to the court on June 8, 2009.

On June 8, 2009, the parties participated in a conference with Judge Schenkier at which time the parties reported that a settlement had been reached, and the open trademark issue had been resolved. Tr. 6-7. Judge Schenkier noted that the parties did not say that reducing the settlement to a written document was a condition precedent to the settlement agreement. Tr. at 7.

Thereafter, the parties exchanged term sheets for the settlement with counsels' comments. *See generally* Tr. at 10-25.

Then on July 8, 2009, there was a status hearing with the court at which the parties reported to Judge Schenkier that a dispute had arisen about reducing the settlement to writing because Mr. Mostow was insisting that the Ramsden Parties' license for technology be exclusive rather than nonexclusive. Tr. at 26. Judge Schenkier noted at that status that the parties had not agreed that Ramsden Parties' license for technology be exclusive rather than nonexclusive. Judge Schenkier set the matter for a status hearing on July 22nd to give the parties time to finalize the settlement documentation, and the court further ordered that, if the parties were not able to accomplish that, then Mr. Mostow would be required to personally attend the hearing.

At the July 22nd hearing, the parties reported that they had not been able to advance their efforts to document a settlement. Mr. Mostow attended the hearing as directed, and his attorneys filed a motion to withdraw as counsel for the Mostow Parties which was granted. Mr. Mostow requested time to find new counsel. On September 15, 2009, the Fox Parties and the Ramsden Parties filed their joint motion to enforce the settlement agreement. The Mostow Parties, acting through new counsel, objected to the motion to enforce the settlement.

## LEGAL STANDARD

In considering the report and recommendation of a magistrate judge and a party's objections to that report, a district court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). This "de novo determination" does not require a new hearing, but simply means that the district court must give "fresh consideration to those issues to which specific objections have been made." *Rajaratnam v. Moyer*, 47 F.3d 922, 925 n.8 (7th Cir. 1995)(citation omitted). "If no objection or only partial

objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Syst. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). With this standard in mind, we now turn to the motion to enforce the settlement agreement.

## DISCUSSION

Judge Schenkier recommends enforcement of the settlement agreement based upon two legal conclusions: (1) the parties reached an agreement on the material terms of the settlement; and (2) defendants' execution of the settlement documents was not a condition precedent to a binding agreement. Judge Schenkier also made a factual determination, based on the record, that counsels' representations on behalf of the Mostow Parties were authorized.

The Mostow Parties filed specific objections to Judge Schenkier's report and recommendation, through new counsel, on December 9, 2009. Specifically, the Mostow Parties argued that: (1) Arthur Mostow did not provide his counsel with the necessary or express authority to enter into a settlement agreement; (2) the parties' continued negotiations after the mediation resulted in a series of offers and counteroffers that had the legal effect of extinguishing the original settlement proposal; and (3) Judge Schenkier erred in finding that a settlement had been reached because the purported settlement agreement was incomplete and lacking in essential terms. Pursuant to Federal Rule 72, we now turn to defendants' objections and make a de novo determination on the merits of the Mostow Parties' objections.

**I. Additional Evidence Submitted By the Mostow Parties Is Stricken**

As a threshold matter, we must determine whether to consider the evidence the Mostow Parties submit to us that was not part of the record before Judge Schenkier. Federal Rule 72 permits a district judge to receive further evidence. FED. R. CIV. P. 72(c) However, the court also may refuse to hear new evidence. *See, e.g., Patterson-Leitch Co. v. Mass. Wholesale Elec. Co.*,

840 F.2d 985, 991 (1st Cir. 1988) ("Systematic efficiencies would be frustrated and the magistrate's role reduced to that of a mere dress rehearsal if a party were allowed to feint and weave a the initial hearing and save its knockout punch for the second court."); *Ball's Health & Tennis Corp. v. Almaui*, 1998 WL 98147, at *4 (N.D. Ill. 1998) (noting that objecting party was attempting to "supplement the record that it failed to present adequately in the first instance").

When Judge Schenkier read his findings of fact and conclusions of law into the record, he specifically noted that the Mostow Parties had chosen to withhold certain communications between Mr. Mostow and his former lawyers. Judge Schenkier opined:

> I do not know what Mr. Mostow may have written in the redacted portions of that e-mail. I don't know what he may have written in the attachment that the Mostow parties have declined to provide to the Court. The Mostow parties do not explain in their brief why they declined to provide the full e-mail or the attachment. Surely, they could not have withheld those materials due to any legitimate concern about waiving privilege, as I find it difficult to understand how the Mostow parties reasonably could believe that they could selectively disclose a portion of Mr. Mostow's communications with Mr. Bell about settlement, a portion they plainly thought would help their argument, while concealing other comments about settlement in that very same communication. To allow that to happen, of course, would be to allow the privilege to be used as a sword and a shield, which is impermissible.
>
> The decision of the Mostow parties to withhold portion of the July 6th e-mail and the entirety of the attachment suggests that the concealed materials do not assist and may contradict the arguments of the Mostow parties. But at a minimum, without seeing the withheld portions, I do not accept the contention . . . that the concealed portions [contain] substantive comments that reflect a failure of agreement on material terms.

Tr. at 22-23. The Mostow Parties could have submitted the communications between Mr. Mostow and his former attorneys but chose not to. It would be unfair to the parties and a waste of judicial resources if the Mostow Parties were now allowed to use the withheld communications after Judge Schenkier issued his opinion based upon the record before him. Nevertheless, we have reviewed the additional evidence the Mostow Parties have submitted to us

that was not submitted to Judge Schenkier. Even if we were to allow the additional evidence, it would not change our mind as to the outcome of this motion.

## II. Mostow's Attorneys Had Authority To Enter Into The Agreement On The Terms And Conditions To Which The Parties Agreed

Because the issue of the authority of Mr. Mostow's attorneys is relevant to whether or not there was agreement as to all material terms, we will discuss this issue first. Mr. Mostow attended and participated in the mediation with his attorneys. Mr. Mostow's argument regarding his attorneys' authorization was made for the first time in his objections to Judge Schenkier's report and recommendation. Courts routinely have held that arguments not raised before a magistrate judge and raised for the first time in the objections filed before the district judge are waived. *U.S. v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000); *Cunningham v. Posnet Servs., LLC*, 2008 U.S. Dist. LEXIS 25967, at *8-9 (S.D. Ill. Apr. 1, 2008) (in considering a magistrate judge's report and recommendation to enforce a settlement agreement, the district judge held that plaintiffs waived certain arguments that were raised for the first time in their objections); *see also Hopson v. Davis*, 2006 U.S. Dist. LEXIS 8130, at *2 (S.D. Ill. Feb. 3, 2006) ("arguments raised for the first time in an objection are waived."); *Lowe v. Frank*, 2004 U.S. Dist. LEXIS 5380, at *8 (W.D. Wis. Mar. 9, 2004) ("Petitioner asserted this claim for the first time in his objections to the magistrate judge's report and recommendation. That was too late."). Pursuant to Rule 72(b) we are to make a de novo determination regarding defendants' objections; however, the introduction of brand new arguments "at the district court level would undercut the rule that the findings in a magistrate judge's report and recommendation are taken as established unless the party files objections to them." *Melgar*, 227 F.3d at 1040.

Judge Schenkier concluded: "To the extent that Mr. Mostow claims that he wasn't aware of the agreements that were reached at the May 22nd conference in his presence and with his full participation, I do not find that credible. To the extent that Mr. Mostow says he was not aware of the subsequent agreement on the license he would grant to the [Fox Parties] for use of the marks, that assertion is inconsistent with the statement by his counsel during the June 8th conference that a settlement had been reached." Tr. at 8-9. Judge Schenkier further stated that "[t]he Mostow Parties have offered nothing to persuade [him] that during the June 8th conference, when all lawyers, including [counsel for the Mostow Parties], told the court that a settlement had been reached, the lawyers made that statement without Mr. Mostow's knowledge and approval." Tr. at 9. Nothing has convinced us otherwise.

We find that the Mostow Parties not only waived any argument regarding counsel's lack of authority by raising it for the first time in their objections to Judge Schenkier's recommendation, but they expressly stated otherwise. Therefore, we reject the Mostow Parties' lack of authority objection to Judge Schenkier's report and recommendation and will proceed with the remainder of our analysis based upon our finding that the actions and representations to the court were authorized.

### III. There Was An Agreement As To All Material Terms

The Mostow Parties also object to Judge Schenkier's conclusion that the parties reached an agreement on the material terms of the settlement. However, the undisputed facts and the record in this case demonstrate that the parties reached an agreement as to all material terms no later than June 8, 2009.

"Oral settlements made in open court and on the record are enforceable by a district court." *Wilson v. Detella*, 2005 U.S. Dist. LEXIS 17546, at *6 (N.D. Ill. Aug. 18, 2005)(citing

*Wilson v. Wilson*, 46 F.3d 660, 667 (7th Cir. 1995)). While a meeting of the minds as to all material terms is required, *Abbott Labs.*, 164 F.3d at 387, "settlement agreements that do not explicitly resolve ancillary issues can nonetheless be enforceable." *Porter v. Chi. Bd. of Educ.*, 981 F. Supp. 1129, 1131 n.4 (N.D. Ill. 1997). Therefore, "[t]he fact that the parties le[ave] some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement." *Id.* (citations omitted). While a contract may be enforced if some terms are missing or incomplete, "if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken there is no contract." *Detella*, 2005 U.S. Dist. LEXIS 17546, at *7-8 (quoting *Acad Chi. Publishers v. Cheever*, 144 Ill. 2d 24, 30, 578 N.E.2d 981, 984 (Ill. 1991) (citations omitted)). Courts within the Seventh Circuit have enforced settlement agreements when the parties agreed on the amount to be paid, although other terms had not been agreed upon. *E.g., Wilson*, 46 F.3d at 667 (affirming the enforcement of an oral settlement agreement despite the fact that the agreement did not specify whether there would be mutual releases or covenants not to sue); *Flood v. Ty, Inc.*, 2005 U.S. Dist. LEXIS 7974 (N.D. Ill. Apr. 5, 2005) (recommending enforcement of oral settlement agreement notwithstanding subsequently-raised issues of confidentiality and release of attorney's lien), *adopted and case dismissed with prejudice, Flood v. Ty, Inc.*, No. 02 C 9497 (N.D. Ill. Nov. 29, 2005).

Based upon the standards articulated above, it is clear that an agreement as to all of the material terms was reached in this case. At the mediation, the record show that the parties negotiated the material terms of the settlement except for use of the name "Diamond Ice Prints" by the Fox Parties. Those terms included: (1) a "walk away," meaning that there would be no financial payment on any claims made aby any party in the case; (2) confidentiality; (3) the Fox Parties would return certain glass and presses; (4) Mr. Mostow would keep certain trademark

8

and a website; (5) the Ramsden Parties would provide a royalty free non-exclusive license to the Mostow Parties and the Fox parties for products identified in a Letter of Intent; (6) there would be a mutual release and dismissal with prejudice of all litigation; (7) all previous agreements entered into between the parties would be terminated; (8) the parties would issue a joint statement concerning the outcome of the litigation; (9) an agreement of non-disparagement that would be specifically limited to the principals of the parties, Robert Fox, Arthur Mostow and Paul Ramsden; and (10) a resolution of all disputed between the Mostow and Ramsden Parties, which involved the dissolution of Surprize with Mr. Mostow assuming certain costs and Mr. Ramsden assuming certain debts. Tr. at 5-6.

The record further shows that when the parties left the mediation on May 22, 2009, the only remaining material term that needed to be resolved and had not been agreed upon was whether Art Crystal would be able to continue to use certain names and trademarks and logos that Mr. Mostow claimed infringed his alleged marks. Tr. at 5-6. Judge Schenkier concluded: "To the extent that Mr. Mostow claims that he wasn't aware of the agreements that were reached at the May 22nd conference in his presence and with his full participation, I do not find that credible. To the extent that Mr. Mostow says he was not aware of the subsequent agreement on the license he would grant to the [Fox Parties] for use of the marks, that assertion is inconsistent with the statement by his counsel during the June 8th conference that a settlement had been reached." Tr. at 8-9.

Following the mediation and after resolving the outstanding trademark issue, counsel for all parties reported to Judge Schenkier on June 8, 2009 and represented on the record that a settlement had been reached and that all material terms had been agreed upon. Judge Schenkier set the next status date for July 8th for the parties to report on the progress of reducing the

agreement to writing. Specifically, Judge Schenkier stated, and the record supports this conclusion, that: "[A]s of June 8th, the parties left the Court with the understanding that a settlement had been reached based on the terms agreed at the May 22nd conference and the subsequent agreement that had been reached among them as to how to resolve the trademark issue." Tr. at 7. Nothing that the Mostow Parties has submitted to this court convinces us otherwise.

The Mostow Parties also argue that there never was a settlement because the term sheet exchanged by the parties contained differences and that there never was a meeting of the minds. However, minor differences between the exchanged term sheets are immaterial to finding the existence of an agreement. *See, e.g., Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 997 (7th Cir. 2001) (lack of agreement on minor immaterial terms will not preclude a finding that a contract has been formed). According to Judge Schenkier, the differences between the term sheets were either "nonmaterial" or the Mostow Parties' term sheets included terms that did not reflect the agreement on the terms reached at the May 22, 2009 mediation. Tr. at 19, 38, 39.

Only after the parties exchanged term sheets did Mr. Mostow then attempt to repudiate the settlement based upon an already resolved issue – the scope of the license that Mr. Ramsden offered both the Fox Parties and the Mostow Parties at the mediation. At the July 8, 2009 status conference, counsel reported that Mr. Mostow insisted that he receive an exclusive license agreement to the exclusion of the Fox Parties. However, Judge Schenkier recognized, and we agree, that this was not the deal to which the parties agreed. Judge Schenkier stated: "That was certainly not what the parties agreed to at the settlement conference on May 22nd. At that time the agreement was for a nonexclusive license. And there is no evidence that has been submitted by anybody that there was a change in that provision prior ro June 8th when the parties reported

10

that they had reached an agreement on all terms and reported that to the Court." Tr. at 26. Judge Schenkier had a further colloquy with Mr. Mostow's attorney in which counsel indicated that it was his recollection that the license was to be nonexclusive. Tr. at 27. Indeed, Judge Schenkier recognized that "[b]oth draft term sheets circulated by Mr. Mostow's counsel on July 12th and July 2nd stated that the license was to be nonexclusive." Tr. at 27.

The Seventh Circuit has held that "[a] party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient. . . . If a party to a . . . suit who has previously authorized a settlement changes his mind..., that party remains bound by the terms of the agreement." *Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 454-55 (7th Cir. 1986)(citations omitted); *see also Porter*, 981 F. Supp. at 1132 (holding that "a mere change of mind is not sufficient grounds for setting aside a settlement agreement") (quoting *Moore v. Cooper*, 1996 U.S. Dist. LEXIS 5387, at *7 (N.D. Ill. Apr. 24, 1996)). Based on the record, we agree with Judge Schenkier's conclusions that the parties had reached a settlement on all material terms. For these reasons, we adopt Judge Schenkier's finding that the parties reached an agreement on the material terms of the settlement and overrule the Mostow Parties' objections.

## IV. Mostow's Insistence That The Settlement Be In Writing Was Never a Condition Precedent

While it was anticipated that the parties would enter into a written settlement agreement, there is no indication in the record that any of the parties conditioned the settlement agreement on it first being reduced to writing. Indeed, Judge Schenkier specifically found that there was no condition that the settlement agreement be signed in order to be enforceable. Tr. at 33. Judge Schenkier stated: "I find Mr. Mostow's statement that he insisted on a written agreement as a

condition of settlement at the mediation is flatly incorrect. That did not occur." Tr. at 34. Oral agreements are enforceable by a court "even if the parties to an oral settlement agreement anticipate a formal written document and one is never created or finalized. *Detella*, 2005 U.S. Dist. LEXIS 17546, at *7 (citing *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1992)); *Thermos Co. v. Starbucks Corp.*, 1998 U.S. Dist. LEXIS 8350, at * 12 (N.D. Ill. May 28, 1998).

Nothing Mr. Mostow has presented to this court convinces us otherwise. Indeed, to the extent that Mr. Mostow raises this point or any of the points he raises in his objection to Judge Schenkier's report and recommendation, the law prohibits him from undoing an agreement to which he agreed, and he cannot in hindsight attempt to re-negotiate for a better deal. Judge Schenkier concluded, and the record clearly shows, that the parties had an oral agreement to settle, and that agreement may not be undone merely because it had not been formalized in a written settlement agreement.

## CONCLUSION

For all of the reasons set forth in the court's Memorandum, Opinion and Order, we adopt Judge Schenkier's findings of fact and conclusions of law. Plaintiffs' motions to enforce the settlement agreement [95, 107] are granted, and defendants' objections [148] are overruled. It is so ordered.

*Wayne Andersen*
_____
Wayne R. Andersen
United States District Court

Dated: April 27, 2010